

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

**PORTFOLIO RECOVERY ASSOCIATES, INC.,**

       **Plaintiff,**

**v.**                                           **Civil No.: 2:12cv649**

**PORTFOLIO RECOVERY GROUP, LLC,**

       **Defendant.**

### OPINION AND ORDER

This matter is before the Court on a motion for default judgment filed pursuant to Rule 55 of the Federal Rules of Civil Procedure by Plaintiff, Portfolio Recovery Associates, Inc. ("Plaintiff"), against Defendant, Portfolio Recovery Group, LLC ("Defendant"). After examination of the uncontested evidence submitted by Plaintiff in connection with the instant motion, as well as the record of this matter as a whole, the Court has determined that a hearing on the instant motion is unnecessary, as the facts and legal arguments are adequately presented, and the decisional process would not be aided significantly by oral argument. Fed. R. Civ. P. 78(b); E.D. Va. Loc. Civ. R. 7(J). For the reasons stated herein, the Court **GRANTS IN PART** Plaintiff's motion and **DIRECTS** that default judgment be entered against Defendant in the manner detailed below.

## I.  FACTS AND PROCEDURAL HISTORY

### A.  Facts[1]

Plaintiff is a publicly traded company that, since its inception in 1996, has engaged in the business of purchasing and administering debt accounts and instruments acquired from financial institutions and other corporate lenders. Compl. at ¶ 6, ECF No. 1. Plaintiff owns United States Trademark Registration Nos. 2,878,822 ("'822 registration") and 4,002,543 ("'543 registration") for "Portfolio Recovery Associates" and "Portfolio Recovery Assoc," respectively. Id. at ¶ 9; Exs. A, B, ECF No. 1. Since 1998, Plaintiff has also owned and operated an interactive website under the domain name <portfoliorecovery.com>. According to the Complaint, Plaintiff's careful maintenance of its mark, trade name, and domain name has resulted in its excellent reputation, substantial goodwill in the industry, and an "A+" rating with the Better Business Bureau. Id. at ¶ 11-14, ECF No. 1.

In January 2010, Defendant registered Portfolio Recovery Group, LLC as a limited liability corporation in New York and began operating a website under the domain name <portfoliorecoverygroup.net>. Id. at ¶ 15-16. According to

---

[1] The following facts are taken directly from the Plaintiff's Complaint. By its default, Defendant has conceded the factual allegations in the Complaint. See, e.g., Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2001).

Plaintiff, Defendant engages in the same business as Plaintiff. Id. at ¶ 17. Despite having received written notice by Plaintiff to cease its activities, Defendant continues to operate its business under the name Portfolio Recovery Group, LLC. Id. at ¶ 26-27.

## B. Procedural History

On November 30, 2012, Plaintiff filed a Verified Complaint, alleging six counts against Defendant, including: (1) Trademark Infringement, in violation of 15 U.S.C. § 1114; (2) Federal Passing Off, False Designation of Origin, and Misleading Representations of Fact, in violation of 15 U.S.C. § 1125(a); (3) Cyberpiracy, in violation of 15 U.S.C. § 1125(d)(1); (4) Federal Misappropriation, as defined in Int'l News Serv. v. Associated Press, 248 U.S. 215 (1918); (5) Unfair Competition, in violation of Va. Code § 59.1-200; and (6) False Advertising, in violation of Va. Code § 18.2-216. Compl. at ¶ 5-10, ECF No. 1.

Defendant failed to file an answer within twenty-one days of being served with the summons and complaint or make a timely waiver of service pursuant to Fed. R. Civ. P. 12(a)(1). On January 22, 2013, Plaintiff moved for entry of default before this Court. ECF No. 9. The Clerk of Court subsequently entered an order of default. ECF No. 10. Plaintiff now brings the instant motion seeking default judgment and an award of: (1)

3

injunctive relief, including the cessation of any use of
Plaintiff's mark, (2) cancellation of Defendant's domain name,
(3) transfer of all infringing materials to Plaintiff, and (4)
statutory damages. ECF No. 11. On June 3, 2013, the Court
ordered Plaintiff to file supplemental briefing on whether the
Court could exercise personal jurisdiction over Defendant. ECF
No. 13. The Court having still not received any response from
Defendant in over nine months since Plaintiff filed its
complaint, the instant motion is ripe for review.

## II. STANDARD OF REVIEW

Rule 55 of the Federal Rules of Civil Procedure provides
that entry of default is appropriate "[w]hen a party against
whom a judgment for affirmative relief is sought has failed to
plead or otherwise defend." Fed. R. Civ. P. 55(a). Such is the
case here and, as noted above, the Clerk has entered default
against Defendant. Next, a plaintiff may then move for a
default judgment. Default judgment may be entered by the clerk
if the plaintiff's claim is for a sum certain or a sum that can
be made certain by computation by the clerk. Fed. R. Civ. P.
55(b)(1). In all other cases, "where a claim is not for a sum
certain, the plaintiff must apply to the court for a default
judgment." EMI April Music, Inc. v. White, 618 F. Supp. 2d 497,
505 (E.D. Va. 2009). The Court may hold a hearing to conduct an
accounting, determine damages, establish the truth of

4

allegations, or investigate other matters to determine whether to enter default judgment. Fed. R. Civ. P. 55(b)(2).

In considering whether to enter default judgment, the Court recognizes that, by its default, Defendant has conceded the factual allegations in the Complaint. See, e.g., Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2001). However, default does not constitute an admission of the adversary's conclusions of law, and is not to be "treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover." Id. (quoting Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)). Instead, the Court must "determine whether the well-pleaded allegations in [the movant's] complaint support the relief sought in [the] action." Id. at 780. In performing that task, the Court will examine the essential elements of each of Plaintiff's claims and determine whether Plaintiff has pled facts sufficient to satisfy those elements.

## III. DISCUSSION

### A. Trademark Infringement

In Count I, Plaintiff accuses Defendant of trademark infringement, in violation of Section 32 of the Lanham Act, codified at Title 15 of the United States Code, Section 1114. In order to succeed on such a claim, Plaintiff must prove that (1) it owns a valid mark; (2) Defendant used the mark in

5

commerce and without Plaintiff's permission; (3) Defendant used the mark in connection with the sale, offering for sale, distribution, or advertising of goods or services; and (4) Defendant used the mark in a manner likely to confuse consumers as to the source or origin of goods or services. Rosetta Stone Ltd. v. Google Inc., 676 F.3d 144, 152 (4th Cir. 2012); see also Lamparello v. Falwell, 420 F.3d 309, 313 (4th Cir. 2005); People for the Ethical Treatment of Animals v. Doughney, 263 F.3d 359, 364 (4th Cir. 2001). After a review of the Complaint and the applicable law, the Court concludes that Plaintiff has successfully proven its claim of trademark infringement.

Plaintiff satisfies the first element – its possession of a valid mark – by alleging that its mark and logo are "registered in the United States Patent and Trade Mark Office," and by submitting a copy of Plaintiff's registrations of its mark and logo with the United States Patent and Trademark Office.[2]  See Compl. at ¶ 9, Exs. A-B, ECF No. 1 (showing the '822 registration entered on Aug. 31, 2004 and the '563 registration entered on July 26, 2011).

---

[2] "It is well established that when the PTO issues a certificate of registration, that registration provides the registrant with prima facie evidence of 1) the validity of the mark and its registration, 2) the registrant's ownership, and 3) the registrant's "exclusive right" to use the mark on or in connection with the goods and services specified in the certificate of registration." U.S. Search, LLC v. U.S. Search.com, Inc., 300 F.3d 517, 524 (4th Cir. Va. 2002) (emphasis omitted) (citing Am. Online, Inc. v. AT & T Corp., 243 F.3d 812, 816 (4th Cir. 2001)).

With respect to the second and third elements, the
Complaint sufficiently alleges that "Defendant registered
Portfolio Recovery Group, LLC," as a limited liability
corporation in New York, "operates a website at the domain name
<portfoliorecoverygroup.net>," and "engages in the same or
similar industry as Plaintiff's subsidiary, to wit, the
collection of charged off accounts, using its confusingly
similar name and website." Compl. at ¶¶ 15-17, ECF No. 1.
Title 15 of the United States Code, Section 1127 provides that
the phrase "use in commerce," with respect to services, means
"used or displayed in the sale or advertising of services and
the services are rendered in commerce, or the services are
rendered in more than one State or in the United States and a
foreign country and the person rendering the services is engaged
in commerce in connection with the services." 15 U.S.C. § 1127.
Plaintiff's Complaint alleges that Defendant has used the mark
in the business of "the collection of charged off accounts,"
using both its "similar name and website," and that Defendant
has managed at least two accounts, both of which Plaintiff
discovered after receiving threatened or filed litigation meant
for Defendant. Compl. at ¶ 17, 18, ECF No. 1. Additionally,
Plaintiff's Complaint alleges that it has twice given written
notice to Defendant to cease the use of its mark, thus showing
that Defendant's use of the mark was without Plaintiff's

7

permission. Id. at 26.

Plaintiff's complaint also satisfies the fourth element, that Defendant used the mark in a manner likely to confuse consumers. "A likelihood of confusion exists if 'the defendant's actual practice is likely to produce confusion in the minds of consumers about the origin of the goods or services in question.'" George & Co., LLC v. Imagination Entm't Ltd., 575 F.3d 383, 393 (4th Cir. 2009) (quoting CareFirst of Md., Inc. v. First Care, P.C., 434 F.3d 263, 267 (4th Cir. 2006)). The Court of Appeals has counseled that courts are to look at nine factors when assessing whether likelihood of confusion exists. These nine factors are as follows:

(1) the strength or distinctiveness of the plaintiff's mark as actually used in the marketplace; (2) the similarity of the two marks to consumers; (3) the similarity of the goods or services that the marks identify; (4) the similarity of the facilities used by the markholders; (5) the similarity of advertising used by the markholders; (6) the defendant's intent; (7) actual confusion; (8) the quality of the defendant's product; and (9) the sophistication of the consuming public.

Id. These factors are not all of equal importance, nor are they all necessarily relevant to the confusion analysis in each case. Id. "[T]hey are 'only a guide--catalog of various considerations that may be relevant in determining the ultimate statutory question of likelihood of confusion.'" Id. (quoting

8

Anheuser-Busch, Inc. v. L & L Wings, Inc., 962 F.2d 316, 320 (4th Cir. 1992)).

When considering many of the factors above, the Court finds that Plaintiff's Complaint alleges facts sufficient to support the conclusion that consumers would likely be confused by the use of the two marks. While the Complaint does not provide sufficient information for the Court to make informed decisions with respect to all of the factors, the factors considered by the Court point strongly to the likelihood of confusion for several reasons.

First, the marks are very similar. Plaintiff's mark is registered as "Portfolio Recovery Associates" and "Portfolio Recovery Assoc," and Defendant has registered its LLC as "Portfolio Recovery Group, LLC." Defendant's name satisfies the definition established in 15 U.S.C. § 1114(1)(a) of a "reproduction, counterfeit, copy, or colorable imitation of [Plaintiff's] registered mark." The first two words of both Plaintiff's and Defendant's marks are exactly the same, and the third words of both marks are generic terms. See Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 124 (4th Cir. 1990) (defining "generic" as "the common descriptive name for a thing," and observing that generic terms are "ineligible for trademark protection").

Second, it is reasonable to conclude that the marks appear

9

similar to consumers and, incidentally, the use of both marks has resulted in actual confusion.   The Complaint alleges that Plaintiff has received threatened or filed litigation from customers who believed they were pursuing Defendant. Additionally, the Complaint alleges that state regulatory agencies and the Better Business Bureau have contacted Plaintiff regarding accounts believed to belong to Defendant.

Third, the marks are used in conjunction with similar services.   The Complaint alleges that Plaintiff and Defendant engage in the same or similar industry, namely, the collection of charged off accounts.

Accordingly, it appears to the Court that there is a significant likelihood of confusion between the two marks. Because the Court concludes that Plaintiff has alleged facts supporting each element of its trademark infringement claim, the Court **GRANTS** Plaintiff's motion for entry of default judgment with respect to Count I.

## B. False Designation of Origin

In Count II, Plaintiff asserts a claim against Defendant for false designation of origin, in violation of 15 U.S.C. § 1125(a).   According to the Fourth Circuit, both trademark infringement claims and false designation of origin claims have the same five elements.

> To prevail under either cause of action, the trademark
> holder must prove: '(1) that it possesses a mark; (2)
> that the [opposing party] used the mark; (3) that the
> [opposing party's] use of the mark occurred 'in
> commerce'; (4) that the [opposing party] used the mark
> 'in connection with the sale, offering for sale,
> distribution, or advertising' of goods or services;
> and (5) that the [opposing party] used the mark in a
> manner likely to confuse consumers.'

Lamparello, 420 F.3d at 313 (quoting People for the Ethical
Treatment of Animals, 263 F.3d at 364). See also Polo Fashions,
Inc. v. Craftex, Inc., 816 F.2d 145, 148 (4th Cir. 1987)
(citations omitted) (stating that, under 15 U.S.C. § 1114(1),
the test is "whether there is a likelihood of confusion of the
counterfeit with the genuine goods" and, under 15 U.S.C.
§ 1125(a), "the test is substantially the same, whether there is
a confusing similarity between the two marks."); Avalere Health,
LLC v. Avalere.org, No. 1:12cv997, 2013 U.S. Dist. LEXIS 61246,
at *14 (E.D. Va. Apr. 10, 2013) (recognizing that the same
elements apply to a claim under 15 U.S.C. § 1114 and 1125(a));
Eurotech, Inc. v. Cosmos European Travels Aktiengesellschaft,
213 F. Supp. 2d 612, 619 (E.D. Va. 2002) (same).

The Court determined above that Plaintiff's Complaint
satisfies the required elements of a trademark infringement
action. Given the fact that the elements of trademark
infringement are identical to the elements of a false
designation of origin claim, the Court concludes that the
Complaint also alleges sufficient facts to satisfy Plaintiff's

claim of false designation of origin against Defendant. Consequently, the Court **GRANTS** Plaintiff's motion for entry of default judgment with respect to Count II.

## C. Cyberpiracy

In Count III, Plaintiff asserts a claim against Defendant for cyberpiracy, in violation of the Anticybersquatting Consumer Protection Act ("ACPA"), codified at 15 U.S.C. § 1125(d)(1). To establish a cause of action for cyberpiracy, Plaintiff must prove that (1) Defendant "had a bad faith intent to profit from using the . . . domain name, and (2) that . . . [such] domain name is identical or confusingly similar to, or dilutive of," Plaintiff's trademark. People for Ethical Treatment of Animals, 263 F.3d at 367; see also 15 U.S.C. § 1125(d)(1)(A). After a careful review of the Complaint and the applicable law, the Court concludes that Plaintiff has successfully proven both elements of cyberpiracy.

The Court will first address the second element of the claim because little analysis is necessary on such element. Plaintiff's Complaint sufficiently alleges facts to support the conclusion that Defendant's domain name is confusingly similar to Plaintiff's trademark. Defendant's domain name, <portfoliorecoverygroup.net>, is the same as its corporation name, "Portfolio Recovery Group," without the spaces. Because, as the Court concluded above, there is a significant likelihood

12

of confusion between the two marks, Portfolio Recovery Associates and Portfolio Recovery Group, the Court finds that Defendant's domain name is "confusingly similar to" Plaintiff's trademark, thereby satisfying the second element of the claim. 15 U.S.C. § 1125(d)(1)(A).

As to the first element, to determine whether a defendant had a bad faith intent to profit from using a domain name, "a court may consider factors such as, but not limited to[:]"

(I) the trademark or other intellectual property rights of the person, if any, in the domain name;

(II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;

(III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;

(IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;

(V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;

(VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;

13

(VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;

(VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and

(IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c) of this section.

15 U.S.C. § 1125(d)(1)(B)(i). "There is no simple formula for evaluating and weighing these factors. For example, courts do not simply count up which party has more factors in its favor after the evidence is in." Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 227 (4th Cir. 2002). Rather, "[t]he ACPA allows a court to view the totality of the circumstances in making the bad faith determination." Virtual Works, Inc. v. Volkswagen of Am., Inc., 238 F.3d 264, 270 (4th Cir. 2001) (noting that "the totality of the circumstances" includes "purely circumstantial indicia of bad faith, as well as the direct evidence"). "[T]he usual preponderance of the evidence standard applies to claims of bad faith registration of domain names under § 1125(d)(1)." Harrods, 302 F.3d at 227.

14

For the following reasons, after carefully considering the factors enumerated in 15 U.S.C. § 1125(d)(1)(B)(i), the Court concludes that Plaintiff's Complaint sufficiently alleges that Defendant acted with a bad faith intent to profit from the use of its domain name, thereby satisfying the first element of the claim.

There is no evidence before the Court regarding the first "bad faith" factor. Therefore, the Court's analysis begins with the second factor. Because Defendant's domain name "consists of the legal name of [Defendant]," 15 U.S.C. § 1125(d)(1)(B)(i)(II), the second factor favors Defendant. Defendant registered its limited liability corporation in 2010, six years after Plaintiff registered its first mark in 2004. The footer of Defendant's website displays a 2010 copyright date, see Ex. D, ECF No. 1, suggesting that Defendant did not have a "prior use . . . of the domain name in connection with the bona fide offering of any goods or services." 15 U.S.C. § 1125(d)(1)(B)(i)(III). Accordingly, the third factor favors Plaintiff. The fourth factor, a "bona fide noncommercial or fair use of the mark," 15 U.S.C. § 1125(d)(1)(B)(i)(IV), favors Plaintiff because Defendant registered its domain for an ostensibly legitimate commercial purpose.

Regarding the fifth factor, Plaintiff's Complaint alleges no evidence of Defendant's subjective "intent to divert

15

consumers" from Plaintiff's website to its own. However, because "intent is rarely discernable directly, it must typically be inferred from pertinent facts and circumstances." Int'l Bancorp, LLC v. Societe Des Bains De Mer Et Du Cercle Des Estrangers a Monaco, 192 F. Supp. 2d 467, 486 (E.D. Va. 2001). Plaintiff's Complaint asserts that it contacted Defendant twice, in writing, to notify Defendant of its infringing activities, to no avail. Considering Defendant's refusal to respond to Plaintiff's Complaint, as well as the actual confusion caused in at least two instances, Plaintiff has proven by a preponderance of the evidence that Defendant intended to, and did, "divert consumers from [Plaintiff's] online location" to its own domain name "by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site." 15 U.S.C. § 1125(d)(1)(B)(i)(V).

There is no evidence regarding factors six through nine. Therefore, having considered the factors for which evidence is available, as well as "the unique circumstances of the case, which do not fit neatly into the specific factors enumerated by Congress but may nevertheless be considered under the statute,'" Virtual Works Inc., 238 F.3d at 268-69 (quoting Sporty's Farm L.L.C. v. Sportsman's Mkt., Inc., 202 F.3d 489, 499 (2d Cir. 2000)), the Court finds that Defendant acted with the bad faith intent to profit from its confusingly similar website.

16

Accordingly, because the Court concludes that Plaintiff has alleged facts supporting each element of its cyberpiracy claim, the Court **GRANTS** Plaintiff's motion for entry of default judgment with respect to Count III.

## D. Federal Misappropriation

In Count IV, Plaintiff states a claim against Defendant for misappropriating Plaintiff's mark. See ECF No. 12 at 8. In its Complaint, Plaintiff relies on a legal doctrine established in International News Service v. Associated Press, 248 U.S. 215 (1918), as its basis for a claim of "Federal Misappropriation." International News Service, however, "is no longer good law." Barclays Capital Inc. v. Theflyonthewall.com, Inc., 650 F.3d 876, 894 (2d Cir. 2011). "Purporting to establish a principal [sic] of federal common law, the law established by [International News Service] was abolished by Erie R.R. Co. v. Tompkins," 304 U.S. 64 (1938). Id. Thus, the ruling in International News Service survives only "as a description of a tort theory, not as precedential establishment of a tort cause of action." Id.

In its supporting memorandum, Plaintiff relies upon two additional cases in support of its "Federal Misappropriation" claim. See ECF No. 12 at 8. Neither case, however, discusses federal misappropriation as a cause of action separate from the claims already addressed. See Lone Ranger, Inc. v. Cox, 124

17

F.2d 650, 652-53 (4th Cir. 1942) (discussing "the power and duty of a court of equity to . . . enjoin any form of 'passing off' which involves fraudulent appropriation"); Lacoste Alligator, S.A. v. Bluestein's Men's Wear, Inc., 569 F. Supp. 491, 500-01 (D.S.C. 1983) (awarding injunction relating to counts of statutory trademark infringement, statutory false designation of origin, common law unfair competition, and common law trademark infringement, and describing defendant's actions as a "knowing and deliberate misappropriation and diversion of the plaintiffs' property rights in their trademarks"). Accordingly, the Court **DENIES** Plaintiff's motion for default judgment with respect to Count IV.

### E. Virginia Unfair Competition

In Count V of its Complaint, Plaintiff asserts a claim against Defendant for unfair competition under the Virginia Consumer Protection Act, Va. Code. § 59.1-200, and requests "statutory damages, . . . attorney[] fees and court costs, pursuant to Va. Code Section 59.1-204, and injunctive relief, pursuant to Va. Code, Sections 59.1-203.C., and 59.1-205." Compl. at ¶ 53, ECF No. 1. Plaintiff's supporting memorandum, however, rather than discussing Va. Code § 59.1-200, cites a single case discussing "common law unfair competition under Virginia law." ECF No. 12 at 9. Count V of Plaintiff's Complaint, by specifically alleging statutory violations and

18

requesting statutory relief, cannot possibly be read to include an argument regarding "common law unfair competition under Virginia law." ECF No. 12 at 9. Thus, the Court will only consider whether Plaintiff is entitled to relief under "the Virginia Consumer Protection Act, particularly Sections 59.1-200 A.1 through A.6, and A.14, inclusively." Compl. at ¶ 51, ECF No. 1.

The Virginia Consumer Protection Act ("VCPA") prohibits "a supplier in connection with a consumer transaction," from "[m]isrepresenting the source, sponsorship, approval, or certification of goods or services." Va. Code § 59.1-200. The purpose of the VCPA "is to promote fair and ethical standards between suppliers and the consuming public." H. D. Oliver Funeral Apts. v. Dignity Funeral Servs., 964 F. Supp. 1033, 1039 (E.D. Va. 1997). "[A] competitor does not fit in that equation." Id.; see also Diamonds Direct USA, Inc. v. BFJ Holdings, Inc., 2012 U.S. Dist. LEXIS 90222, at *9-10 (E.D. Va. June 28, 2012) (observing that the VCPA was designed "to provide members of the consuming public, not commercial competitors, with a statutory remedy"). Plaintiff's Complaint does not allege that Plaintiff is either a potential or actual consumer of Defendant's services. Rather, it specifically alleges that Defendant is a competitor engaging in "Unfair Competition." Compl. at 9, ECF No. 1 (defining Count V as "State Law Unfair

Competition"). Accordingly, the Court **DENIES** Plaintiff's motion for default judgment on Count V, alleging a claim for unfair competition under the VCPA.

### F. Virginia False Advertising

In Count VI of its Complaint, Plaintiff asserts a claim against Defendant for false advertising under Va. Code § 18.1-216, and requests damages, attorney fees, and court costs, "pursuant to Va. Code Section 59.1-68.3," as well as "injunctive relief pursuant to Va. Code Section 18.2-245." Compl. at ¶ 57, ECF No. 1.

Virginia "Code § 18.2-216 prohibits any advertisement that 'contains any promise, assertion, representation or statement of fact which is untrue, deceptive or misleading, or uses any other method, device or practice which is fraudulent, deceptive or misleading.'" Parker-Smith v. Sto Corp., 551 S.E.2d 615, 619 (Va. 2001). Although an injunction may only be sought by "an attorney for the Commonwealth in the name of the Commonwealth of Virginia," Va. Code. § 18.2-245(b), Va. Code § 59.1-68.3 "subjects the defendant to an action for damages by any person who suffers loss as the result" of a violation, Henry v. R.K. Chevrolet, Inc., 254 S.E.2d 66, 67 (Va. 1979).

Defendant operated its business in the same or similar industry as Plaintiff and it did so under a confusingly similar corporate name. Compl. at ¶ 15, ECF No. 1. Additionally,

20

Defendant registered a confusingly similar domain name to use as its website. Id. at ¶ 16. Although Plaintiff's Complaint does not specifically allege any "promise, assertion, . . . or statement of fact" made by Defendant, the Court reasonably infers from the facts admitted by default that Defendant's intent in establishing its corporate website was "to induce the public" in a "deceptive or misleading" manner into entering a commercial obligation with Defendant. Accord State Auto Prop. & Cas. Ins. Co. v. Travelers Indem. Co. of Am., 343 F.3d 249, 259 (4th Cir. 2003) ("The use of a domain name to lead consumers to advertisements on NCC's websites is clearly an act that occurs 'in the course of' advertising."). Accordingly, the Court GRANTS Plaintiff's motion for default judgment on Count VI.

## G. Relief

Although the Court has already determined above that Plaintiff has supported its legal claims with sufficient facts for four of the six counts alleged, the Court must still determine whether it can properly provide the relief which Plaintiff seeks. In the Complaint, Plaintiff requests the Court grant a series of remedies in favor of Plaintiff. However, in Plaintiff's motion for default judgment, it does not request the full scope of remedies initially listed in the Complaint. As a result, the Court will only address the relief requested in Plaintiff's motion.

21

First, Plaintiff seeks to have the Court order Defendant, its agents, servants, employees, and all persons acting in active concert or participation with Defendant, to cease all use of the name PORTFOLIO RECOVERY within thirty days, and to notify Plaintiff of the same. Similarly, Plaintiff also seeks a permanent injunction against further use of the name PORTFOLIO RECOVERY. Second, Plaintiff requests that this Court order Defendant to withdraw its registration of the domain name <portfoliorecoverygroup.net> within thirty days, and to notify Plaintiff of the same. Third, Plaintiff requests that this Court order Defendant, its agents, servants, employees, and all persons acting in active concert or participation with Defendant, to deliver to Plaintiff within thirty days all labels, signs, prints, packages, wrappers, catalogs, advertisements, letterhead, and other printed or electronic items containing the words PORTFOLIO RECOVERY. Fourth, Plaintiff seeks statutory damages in the amount of $100,000 and reimbursement for Plaintiff's costs, pursuant to 15 U.S.C. §§ 1125(d)(3) and 1117(a).

## 1. Injunctive Relief

Under the Lanham Act, courts have authority to grant injunctive relief for trademark infringement "according to the principles of equity." 15 U.S.C. § 1116(a) ("The several courts vested with jurisdiction of civil actions arising under this Act

22

shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office."). Moreover, such injunctions can be granted in the context of a default judgment. See, e.g., Toolchex, Inc. v. Trainor, No. 3:08-cv-236, 2009 U.S. Dist. LEXIS 64186, at *18 (E.D. Va. July 24, 2009) (granting Plaintiff's motion for default judgment and permanent injunction). "In order to award a permanent injunction, Plaintiff must demonstrate irreparable harm, the inadequacy of a legal remedy (monetary damages), a weight in its favor when balancing hardships, and that the public would not be disserved by making the injunction permanent." Id. at *4 (citing eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006)).

With respect to the first factor, the allegations in Plaintiff's Complaint, which are deemed admitted in light of Defendant's default, sufficiently prove irreparable injury. The Complaint alleges that Plaintiff maintains an "A+" rating with the Better Business Bureau and is recognized as a leader in its industry. If Defendant's use continues, the potential exists for consumers familiar with Plaintiff's services to incorrectly assume that Defendant, which the Complaint alleges has been the target of litigation in at least two instances, is affiliated

23

with Plaintiff. Moreover, existing and potential clients may also confuse the two entities and cause Plaintiff to lose business. Considering the Fourth Circuit's recognition that "irreparable injury regularly follows from trademark infringement," Lone Star Steakhouse & Saloon, 43 F.3d at 939, the Court concludes that Plaintiff has satisfied the first prong necessary for the issuance of a permanent injunction.

Plaintiff has also shown the inadequacy of legal remedies. Even after twice receiving written notice of its infringement, Defendant continues to use the name PORTFOLIO RECOVERY in the debt collection industry. Compl. at ¶ 27, ECF No. 1. Although Plaintiff also seeks monetary damages in its Complaint, those damages will not prevent future infringement from occurring. To be sure, denial of an injunction would simply force Plaintiff "to suffer continued infringement and to bring successive suits for monetary damages." Teaching Co. Ltd. P'ship v. Unapix Entm't, Inc. 87 F. Supp. 2d 567, 587 (E.D. Va. 2000) (citations omitted). Accordingly, legal remedies are inadequate to remedy the violations in this case.

Plaintiff has also demonstrated that the balance of hardships weighs in its favor. Defendant possesses no legal right to continue its current course of conduct – namely, operating its business under a mark very similar to Plaintiff's in the same or similar industry in which Plaintiff operates.

Defendant's continued use of marks similar to Plaintiff's has the potential to further mislead consumers as to the origin and affiliation of Defendant's services and raises the prospect of undermining the goodwill Plaintiff has developed in the debt collection industry. The loss of such goodwill creates an environment where potential clients may look to competitors instead of Plaintiff. As a result, the third factor favors the issuance of a permanent injunction.

The Court also resolves the fourth factor in Plaintiff's favor. The public interest would not be disserved by the granting of a permanent injunction. Because preventing confusion is in the public's interest, Toolchex, Inc., 2009 U.S. Dist. LEXIS 64186, at *7, and because the Court found in Count I that Plaintiff alleged facts sufficient to support its claim that Defendant's use of the mark PORTFOLIO RECOVERY "is likely to cause, and has caused, confusion or mistake," and is likely "to deceive the public," Compl. at ¶ 23, ECF No. 1, the public would be served by the granting of a permanent injunction. See, e.g., Innovative Value Corp. v. Bluestone Fin., LLC., No. DKC 2009-0111, 2009 U.S. Dist. LEXIS 96225, at *7 (D. Md. Oct. 15, 2009) ("[T]he public interest would not be disserved by a permanent injunction, as there is greater public benefit in securing the integrity of Plaintiffs' mark than in allowing

Defendant to continue to use the mark in violation of Plaintiffs' rights.").

For the reasons stated above, the entry of a permanent injunction against Defendant is appropriate.    Therefore, the Court **GRANTS** Plaintiff's request for entry of a permanent injunction.   Defendant, its agents, servants, employees and all those who are in active concert or participation with Defendant, who receive actual notice of this injunction, are **PERMANENTLY ENJOINED** from directly or indirectly using, or inducing or contributing to the use of, the name and mark PORTFOLIO RECOVERY GROUP, or any other name and mark similar to the PORTFOLIO RECOVERY ASSOCIATES mark, so as to be likely to cause confusion, mistake or deception in the marketplace and in the general public.

## 2. **Withdrawal of Domain Name Registration**

Plaintiff also requests that the Court order Defendant to withdraw its registration of the domain name <portfoliorecoverygroup.net>.    15   U.S.C.   §   1125(d)(1)(C) authorizes a Court to "order the forfeiture or cancellation of the [infringing] domain name or the transfer of the domain name to the owner of the mark."  Defendant's domain name contains the name PORTFOLIO RECOVERY GROUP and, as stated above, Defendant is permanently enjoined from using the name and mark PORTFOLIO RECOVERY GROUP, or any other name and mark similar to the

PORTFOLIO RECOVERY ASSOCIATES mark. Therefore, Defendant is **ORDERED** to cancel its registration of the domain name <portfoliorecoverygroup.net> within thirty days of the issuance of this Order.

### 3. Destruction of Infringing Materials

Plaintiff also requests that the Court order Defendant, its agents, servants, employees and all those in active concert or participation with Defendant, to deliver to Plaintiff all labels, signs, prints, packages, wrappers, catalogs, advertisements, letterhead, and other printed or electronic material bearing the name and mark PORTFOLIO RECOVERY. The Court has the power to order such action pursuant to 15 U.S.C. § 1118, which reads:

In any action arising under this Act, in which a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 43(a) [15 U.S.C. § 1125(a)], or a willful violation under section 43(c) [15 U.S.C. § 1125(c)], shall have been established, the court may order that all labels, signs, prints, packages, wrappers, receptacles, and advertisements in the possession of the defendant, bearing the registered mark or, in the case of a violation of section 43(a) [15 U.S.C. § 1125(a)] or a willful violation under section 43(c) [15 U.S.C. § 1125(c)], the word, term, name, symbol, device, combination thereof, designation, description, or representation that is the subject of the violation, or any reproduction, counterfeit, copy, or colorable imitation thereof, and all plates, molds, matrices, and other means of making the same, shall be delivered up and destroyed.

27

15 U.S.C. § 1118. However, given the fact that the statute states that the court *may* order such action, the decision is left to the discretion of the Court. See Breaking the Chain Found., Inc. v. Capitol Educ. Support, Inc., 589 F. Supp. 2d 25, 33 (D.D.C. 2008) (citations omitted) ("The decision whether to order Defendant to 'deliver [] up and destroy' all papers, signs, labels, prints, packages, advertising or other promotional materials bearing Plaintiff's trademark is committed to the Court's discretion.").

Previously in this Opinion and Order, the Court concluded that Defendant had engaged in trademark infringement and actions constituting false designation of origin. As a result, such violations "have been established," which is a necessary precursor to ordering the destruction of items pursuant to 15 U.S.C. § 1118. See 15 U.S.C. § 1118. Given this finding, "the Court is of the view that the return and destruction of infringing materials is reasonable, will provide a more effective remedy, and significantly reduce the likelihood of any further confusion." E.I DuPont De Nemours and Co. v. Magic Touch Cleaning and Restoration, Inc., No. 5:10-cv-381-Oc-34TEM, 2011 U.S. Dist. LEXIS 71662, at *4 (M.D. Fla. Jul. 5, 2011). Therefore, Defendant is **ORDERED** to deliver to Plaintiff within thirty days of the issuance of this order all labels, signs, prints, packages, wrappers, catalogs, advertisements,

letterhead, and other printed or electronic material bearing the name and mark PORTFOLIO RECOVERY owned[3] by Defendant.

## 4. Statutory Damages

Plaintiff requests "an amount up to $100,000 in statutory damages, in the discretion of the Court" for Defendant's "violation of § 1125(d)(1) of the [Lanham] Act." ECF No. 12 at 10-11. 15 U.S.C. § 1117(a) allows a successful plaintiff, "subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." These damages "shall constitute compensation and not a penalty." 15 U.S.C. § 1117(a). In appropriate circumstances, a court may award treble damages. See 15 U.S.C. § 1117(b) ("In assessing damages under subsection (a) of this section, the court shall, unless the court finds extenuating circumstances, enter judgment for three times such profits or damages, whichever is greater, together with a reasonable attorney's fee[.]"). When making a damages award, a court should consider:

(1) whether the defendant had the intent to confuse or deceive, (2) whether sales have been diverted, (3) the adequacy of other remedies, (4) any unreasonable delay by the plaintiff in asserting his rights, (5) the public interest in making the misconduct unprofitable,

---

[3] The Court has chosen to apply this Order regarding delivery only to those items owned by Defendant, because it is possible that goods possessed by Defendant may be owned by non-parties, and requiring the delivery of such items might raise due process concerns in the absence of evidence regarding notice to such parties. See NASCAR v. Doe, 584 F. Supp. 2d 824, 829-30 (W.D.N.C. 2008).

and (6) whether it is a case of palming off.

Synergistic Int'l, LLC v. Korman, 470 F.3d 162, 175 (4th Cir. 2006) (citing Quick Techs., Inc. v. Sage Group PLC, 313 F.3d 338, 349 (5th Cir. 2002)).

Upon the Court's finding of liability against the Defendant as to Count III, Plaintiff is entitled to an appropriate monetary damages award.  Without more detailed facts, however, the Court cannot determine the appropriate amount of damages. Therefore, if Plaintiff still seeks such damages, Plaintiff is **ORDERED** to submit supplemental briefing requesting a specific amount of monetary damages, and showing support for the request, within twenty-one (21) days of the issuance of this Opinion and Order.

### IV. CONCLUSION.

For the reasons discussed above, the Court **GRANTS IN PART** Plaintiff's motion for default judgment and entry of permanent injunction.  Specifically, Default Judgment will be **ENTERED** with respect to Counts I, II, III, and VI.   As to Plaintiff's requested relief, Defendant, its agents, servants, employees and all those who are in active concert or participation with Defendant, who receive actual notice of this injunction, are **PERMANENTLY ENJOINED** from directly or indirectly using, or inducing or contributing to the use of, the name and mark PORTFOLIO RECOVERY, or any other name and mark similar to the

PORTFOLIO RECOVERY ASSOCIATES mark, so as to be likely to cause confusion, mistake or deception in the marketplace and in the general public. Further, the Court **ORDERS** Defendant to deliver to Plaintiff for destruction all labels, signs, prints, packages, wrappers, catalogs, advertisements, letterhead, and other printed or electronic items bearing the name and mark PORTFOLIO RECOVERY owned by Defendant by **November 18, 2013**. Defendant is **ORDERED** to withdraw its registration of the domain name <portfoliorecoverygroup.net> and notify Plaintiff of the same by **November 18, 2013**.

Plaintiff is **ORDERED** to submit supplemental briefing within twenty-one (21) days to establish the appropriate amount of monetary damages, or advise the Court of a decision not to seek such damages. Defendant is required to submit objections to any such claims within seven (7) days after the filing of any brief seeking such damages.

Defendant is **ADVISED** that it may retain counsel and appeal this Order by forwarding a written notice of appeal to the Clerk of the United States District Court, 600 Granby Street, Norfolk, Virginia 23510. Said written notice must be received by the Clerk within thirty (30) days from the date of this Order.

The Clerk is **REQUESTED** to forward a copy of this Opinion and Order to counsel of record for Plaintiff, and to Defendant,

Portfolio Recovery Group, LLC, 793 Center Street, Suite 114, Lewiston, NY 14092.

**IT IS SO ORDERED.**

/s/ Mark S. Davis

Mark S. Davis
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
October 18 , 2013